## WIN-TASCH CORPORATION

### v.

## TOWN OF MERRIMACK

January 24, 1980

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Eugene M. Van Loan, III*, orally), for the plaintiff.

*Bossie & Kelly*, of Manchester (*Robert F. Bossie* orally), for the defendant.

PER CURIAM. The question in this case is whether we should uphold a superior court order vacating the Merrimack Zoning Board of Adjustment's denial of the plaintiff's right to build houses on its property.

On November 10, 1964, the town of Merrimack adopted a zoning ordinance setting 15,000 square feet as the minimum lot size for single-family, residential housing. The measure contained the following grandfather clause:

> Notwithstanding the minimum lot area requirements set forth in Section 2 of this Article, a single-family residence may be constructed on a lot which does not comply with said requirements, provided . . . such lot shall . . . have been shown to be a separate and distinct numbered lot of record at the effective date of this Article by a plan of lots which has been recorded.

On January 4, 1966, a plan for a subdivision in Merrimack known as Turkey Hill Estates was recorded at the Hillsborough County Registry of Deeds. Nine months later, the town raised the single-family lot size minimum to 20,000 square feet; however, because all the Turkey Hill lots were 20,000 square feet or larger, that subdivision was unaffected.

In August 1968, Romeo Taschereau, doing business as Romeo Taschereau, Inc., bought sixty Turkey Hill lots. He soon began construction, and by the end of 1970 he had built and sold fourteen homes. In January 1971, Romeo Taschereau, Inc., deeded the remaining unimproved lots to the plaintiff, Win-Tasch Corporation, another Taschereau-owned corporation. Win-Tasch continued to develop the remaining lots.

On March 6, 1973, the voters of Merrimack raised the lot size minimum for new single-family construction from 20,000 to 40,000 square feet. Win-Tasch made no change in the Turkey Hill lot plan as recorded in 1966 and continued to build, with permits granted after March 6, on lots that were smaller than the new minimum size. In November 1975, the town once again amended the zoning ordinance to require 40,000, 80,000 or 100,000 square feet alternatively, depending on whether a single-family lot was composed of "slight," "moderate" or "severe" soil. Win-Tasch continued to build at Turkey Hill.

In late 1976, the Merrimack building inspector informed the plaintiff that the town had decided to apply the 1975 lot size minimums to Turkey Hill Estates and that development there must stop. The plaintiff applied for permits to continue building but the building inspector denied the application. At a February 23, 1977, hearing before the Merrimack Zoning Board of Adjustment, the plaintiff asked that the building permits issue, apparently on the ground that the 1964 grandfather clause applied to Turkey Hill. In the alternative, he asked for a variance. The board denied the requests and the plaintiff appealed to superior court. RSA 31:77. At a hearing on October 26, 1977, the Master (*Nicholas G. Copadis*, J.) heard evidence that had not been before the board and recommended that the board's order be vacated. *Mullavey*, J., approved the master's report; and *Goode*, J., reserved and transferred all exceptions to this court.

The town first contends that the master improperly relied on RSA 31:82, :85 in hearing evidence that had not been before the board. The statutes in question relate to appeals to the superior court from zoning board determinations, and read in pertinent part as follows:

31:82 —*Evidence; How Considered.* All evidence transferred by the board of adjustment . . . shall be, and all additional evidence received may be, considered by the court . . . .

31:85 —*Hearing, etc.* The court may take evidence or appoint a referee to take such evidence as it may direct . . . .

The town points out that the master had before him the minutes of the board hearing and argues that our holding in *Sweeney v. Dover*, 108 N.H. 307, 234 A.2d 521 (1967) precluded the admission of former building inspector Berg's testimony relating to the grandfather clause. We disagree. In *Sweeney*, we said that the master could hear new evidence, but that the purpose of the statutory provisions for the receipt of such evidence was to assist the court in evaluating board action, but not for a de novo review.

The town also objects to the master's admission into evidence of a letter from town counsel to the Merrimack Board of Selectmen and the building inspector, Mr. John Berg. In the letter, town counsel gave his opinion that the grandfather clause protected any landowner whose lots conformed to the minimum sizes in effect at the time the plan was recorded. This letter, the town argues, was inadmissible because it was hearsay and because it was a privileged communication between an attorney and his client. We do not consider whether the letter would be admissible in the usual superior court trial. Evidentiary issues arising in appeals from zoning boards of adjustment are governed by RSA 31:82, which reads as follows: "All evidence transferred . . . and all additional evidence received may be . . . considered by the court *regardless of any technical rule* which might have rendered the same inadmissible if originally offered in the trial of an action at law." (Emphasis added.) We hold that the letter was admissible. *See Levesque v. Town of Hudson*, 106 N.H. 470, 214 A.2d 553 (1965).

The town's next argument appears to be that the evidence adduced at the superior court hearing, whether or not properly admitted, was not sufficient to support the master's finding that "the Town of Merrimack through its building inspectors, Town Counsel, and other officials, consistently interpreted the Grandfather Clause to protect all recorded subdivisions, included [sic] those recorded after November 1964, from subsequent changes in the lot size requirements." This argument has no merit. There was evidence that before 1976, Taschereau and other developers were granted permits to build on lots that were too small at the date of the permits but that had been within the minimums in effect when the plans were recorded. There was also testimony that building inspector O'Malley, and other former building inspectors and their assistants, had consistently interpreted and administered the grandfather clause to protect lots that complied with size minimums in effect when the lots were recorded. The test on appeal is not whether we would have found as the master did, but whether there was evidence on which he could reasonably base his finding. *Lawlor v. Town of Salem*, 116 N.H. 61, 352 A.2d 721 (1976). The evidence was sufficient in this case.

The next question is whether the master properly ruled that the grandfather clause protected the plaintiff's lots. We hold that he did. In his report, the master quotes language from *New Hampshire Retail Grocers Assoc. v. State Tax Commission*, 113 N.H. 511, 514, 309 A.2d 890, 892 (1973):

It is a well established principle of statutory construction that a longstanding practical and plausible interpretation

given a statute of doubtful meaning by those responsible for its implementation without any interference from the legislature is evidence that such a construction conforms to the legislative intent.

This principle has long been part of the jurisprudence in this State, *see, e.g., Holland v. N.H. Bd. of Chiropractic Examiners,* 119 N.H. 17, 396 A.2d 556 (1979); *Farrelly v. Timberlane Regional School Dist.,* 114 N.H. 560, 564, 324 A.2d 723, 726 (1974); *Bellows Falls &c. Co. v. State,* 94 N.H. 187, 190, 49 A.2d 511, 512–13 (1946); *Wyatt v. State Board of Equalization,* 74 N.H. 552, 569, 70 A. 387, 396–97 (1908), and has been voiced in other states. *State v. Bryan,* 112 Neb. 692, 200 N.W. 870 (1924); *Trice v. City of Cranston,* 110 R.I. 724, 730, 297 A.2d 649, 652 (1972).

■■ In the present case, the master found on sufficient evidence that from 1964 to 1976 "the consistent administrative interpretation [of the grandfather clause] comported with the plaintiff's present position." It seems apparent that the voters of Merrimack, if they ever intended that the grandfather clause should protect only lots recorded before 1964, adopted by acquiescence the contrary interpretation given the clause over the years by the building inspectors. That the voters consistently enacted increased minimum lot sizes without substantially changing the grandfather clause strengthens our conclusion. The construction of the grandfather clause is a question of law, *Trottier v. City of Lebanon,* 117 N.H. 148, 370 A.2d 275 (1977), and the master is not bound by the zoning board's decision. *Becker v. Town of Hampton Falls,* 117 N.H. 437, 374 A.2d 653 (1977). Under *Trottier* the proper inquiry is the "ascertainment of the intent of the enacting body." 117 N.H. at 150, 370 A.2d at 276–77. We hold that the master's ruling with respect to the grandfather clause and his order that the permits should issue were legally correct. If the "administrative gloss" placed upon the clause over a period of years is to be changed, the voters of Merrimack, not the zoning board, must change it.

The town also objects to the master's rulings in favor of the plaintiff's alternative arguments that it is entitled to a variance and that the zoning board is estopped from denying the building permits. We do not reach these issues. If the lots are exempt under the grandfather clause, the questions of variance and estoppel are moot. *Town of Seabrook v. Tra-Sea Corp.,* 119 N.H. 937, 410 A.2d 240 (1979); *Graves v. Town of Bloomfield Planning Bd.,* 97 N.J. Super. 306, 235 A.2d 51 (1967).

We now come to the question whether the master properly dismissed the plaintiff's claim for damages. We hold that he did not.

■■ We agree that the "judicial, quasi-judicial, legislative or quasi-legislative" acts of a town may not ordinarily subject it to claims for damages. *Hurley v. Town of Hudson and Sunland Corp.*, 112 N.H. 365, 368, 296 A.2d 905, 907 (1972). However, the master found that "it is clear that the defendant has not acted in good faith" in withholding from the plaintiff its rightful exemption under the grandfather clause. In such a case it makes no sense to preclude a damage claim when one's property or right to enjoy property is harmed. *See* 25 C.J.S., *Damages* § 41 (1966). Such a rule would encourage municipalities and their agents not to act in good faith. Indeed, our legislature has recognized the wisdom of withholding immunity from those in officialdom who fail to interact with the citizen in good faith. Since *Hurley* the legislature has said that members of boards of adjustment, among others, are not liable for damages as long as they act in "good faith." RSA 31:104 (Supp. 1977). Indemnification is provided in certain circumstances. *See* RSA 31:105, :106 (Supp. 1977).

We hold that in this case it was improper to dismiss the damage claim. To hold otherwise in the circumstances of this case would be to encourage developers to violate ordinances and force town injunction proceedings rather than to obey the ordinances and seek redress through available channels. We remand to superior court for consideration of damages for the economic loss.

■ The town finally argues that the plaintiff has no standing in this court because it technically no longer owns the land in question. This argument is without merit. First, it was the defendant, not the plaintiff, who appealed. Second, the plaintiff retains a direct interest in our decision relating to the damages claim.

*Defendant's exceptions overruled; plaintiff's exceptions sustained; remanded.*

BOIS and KING, JJ., did not sit; LAMPRON, C.J., retired, sat by special assignment pursuant to RSA 490:3.