Gerald I. GOLDBERG and Bronwen Goldberg, and L & J Associates, Plaintiffs,

v.

The CITY OF REHOBOTH BEACH, The Mayor and Commissioners of Rehoboth Beach, John A. Hughes, Mildred B. Shields, Walter J. Lehman, Norman B. Shugrue, Samuel R. Cooper, James A. Horty and John J. McTighe, in their official and individual capacities, and the Planning Commission of The City of Rehoboth Beach, and its members Fred Blackwell, James F. Hudson, Helen R. Bieber, N. William Hiller, Norman B. Shugrue, Warren H. MacDonald, John F. Hyde, Evelyn D. Thoroughgood and Mary S. Burton, in their official and individual capacities, Defendants.

Superior Court of Delaware, Sussex County.

Submitted: January 26, 1989.

Decided: February 8, 1989.

Revised: Feb. 17, 1989.

John A. Sergovic, Jr. and Sarah Richardson, Georgetown, for plaintiffs.

N. Maxson Terry, Jr., of Terry, Jackson, Terry & Wright, Dover, and Daniel R. Losco, of Sawyer & Akin, P.A., Wilmington, for defendants.

## OPINION

CHANDLER, Judge.

Plaintiffs Gerald and Bronwen Goldberg and L & J Associates (hereinafter "Goldbergs") have filed a four-count complaint against the City of Rehoboth Beach, the Mayor and Commissioners of the City of Rehoboth Beach in their official and individual capacities and the Planning Commission of the City of Rehoboth Beach and its members in their official and individual capacities seeking a writ of *mandamus*, a writ of *certiorari*, declaratory judgment and damages. Before the Court are the parties' cross-motions for summary judgment.

## I. FACTS

The following facts are undisputed. On July 2, 1986, the Goldbergs purchased a residential property in the City of Rehoboth Beach for $470,000 from St. Edmunds Roman Catholic Church. The property, known as the Rectory, is located at the corner of Columbia and Surf Avenues and consists of three lots (Lots 49 and 50, Surf Avenue and Lot 2, Columbia Avenue) as shown on the Comprehensive Zoning Map of the City of Rehoboth Beach. On the property is a main building which faces Surf Avenue and an accessory garage-apartment to the rear.

On July 30, 1986, the Goldbergs filed an application with the Planning Commission to partition the Rectory property into two separate building lots, one proposed lot consisting of 7475 sq. ft. on which the main building is located and the other consisting of 5000 sq. ft. on which the garage-apartment is located. (See Appendix A). A public hearing was noticed and held on Sept. 8, 1986. The Goldbergs presented evidence that the proposed partition met all the requirements of the City's Subdivision and Zoning Ordinances. At issue, however, was the zig-zagged or stepped boundary line between the two proposed lots. The Goldbergs contended that such a line complied with the definition of a "side yard" in the Zoning Ordinance which states:

SIDE YARD means the required open space between a structure and the side lot line and extending through the whole depth of the lot.

Nevertheless, based upon a similar partitioning request by another landowner that previously had been rejected by the City Commissioners, the Planning Commission voted to deny the Goldbergs' application as it did not provide for a side yard setback which went *straight* through the depth of the lot.

The Goldbergs appealed the denial of their application to the City Commissioners

on Sept. 11, 1986. A hearing on the appeal was held on Oct. 10, 1986 at which time the Goldbergs again presented evidence that the application was in full compliance with the Zoning and Subdivision Ordinances. They argued that a side yard as defined in the ordinance does not require a straight corridor through the depth of the lot and that, in the event the definition is ambiguous, Delaware law required the Commission to construe it in favor of the landowner. The Commissioners, however, voted to affirm the decision of the Planning Commission because the proposed redrawn lot line violated the definition of a side yard setback in the zoning ordinance. On Nov. 6, 1986, the Goldbergs filed this complaint in the Superior Court in and for Sussex County. Thereafter, on Dec. 31, 1986, the Goldbergs sold the property for $550,000 after having spent approximately $80,000 on improvements, carrying and closing costs.

The Goldbergs now concede that the first two counts of their complaint are moot because they no longer own the Rectory property. However, they argue that they are still entitled to declaratory relief and an award of damages for the wrongful denial of their application to partition. They assert that the sale of the property, before the resolution of this case, merely serves to mitigate the damages they have suffered as well as to fix a measure of those damages.

## II. DECLARATORY ACTION

In Count III of their complaint, the Goldbergs have alleged that an actual controversy exists as to their legal rights to the Rectory property, that their application for a partitioning was in complete compliance with all the ordinances and that the City's illegal failure to approve their application unconstitutionally deprived them of rights in real property, *e.g.*, the right to a second building lot on their property. The Goldbergs also have alleged that the property previously had been subdivided into three lots and that they are entitled as a matter of law to a building permit for Lot 2, provided they allow an easement to maintain an encroachment of the structure located primarily on Lots 49 and 50. Furthermore, they have alleged that no merger of these three lots has occurred so that they should be free to convey Lot 2 to a third party, who could then build a separate dwelling on it. The Goldbergs have requested this Court to declare the actions of the City illegal and unconstitutional in depriving them of the use of their property as two separate building lots and to declare that they are entitled to approval of the partitioning application as a matter of law and/or to a separate building permit for a main dwelling to be located on Lot 2, Columbia Avenue.

A declaratory judgment is available as a remedy only where there is an actual controversy between the parties. 10 *Del.C.* § 6501; *Ackerman v. Stemerman*, Del.Supr., 201 A.2d 173 (1964). An actual controversy exists "where one side makes a claim of a present, specific right and the other side makes an equally definite claim to the contrary. [Citations omitted.] The words 'actual controversy' were used in contradistinction to a 'moot' or hypothetical situation." *Clemente v. Greyhound Corp.*, Del.Super., 155 A.2d 316, 320 (1959). The Goldbergs' request for a declaration that they are entitled to approval of their application and/or a separate building permit must be denied in the face of the sale of their property after the filing of this complaint. They can no longer claim a present right to an approval of the partitioning application or a building permit relating to that property.

## III. DUE PROCESS

For the moment I will bypass discussion of the remainder of the Goldbergs' request for declaratory relief in order to deal with the fourth and final count of their complaint. In this count, the Goldbergs have alleged that the arbitrary and capricious acts of the defendants in denying their request for a partitioning constitute a deprivation of private property without due process of law and a taking of property

without compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution, the Delaware Constitution of 1897 and 42 U.S.C.A. §§ 1981, 1982 and 1983.[1] They seek damages in inverse condemnation pursuant to 29 *Del.C.* § 9504 in the amount of the value of the property as two separate building lots, one with an existing improvement and one to be improved, less the value of such property as only one improved building lot, in addition to costs, reasonable attorney's fees and punitive damages.[2]

Plaintiffs contend that they were entitled as a matter of law to have the application for partitioning approved and were denied the right to use their property as two lots susceptible of maintaining two dwellings within the City of Rehoboth Beach. They characterize the actions of the defendants as having deprived them of their private property rights without due process of the law. Although in their brief they generally assert both substantive and procedural due process violations by the defendants, the plaintiffs do not in fact challenge the constitutionality of the City's setback ordinance. Instead, they argue that its *application* to their request was arbitrary and capricious in that the defendants misread and knowingly misapplied the ordinance. As such, I will treat their claim as asserting only a procedural due process violation. *Cf. Pace Resources, Inc. v. Shrewsbury Township*, 3d Cir., 808 F.2d 1023, 1034–1037, *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987) (plaintiff making substantive due process claim has burden of showing that regulation is arbitrary or irrational).

The defendants argue as a preliminary matter that the plaintiffs had merely a unilateral expectation, and not a legitimate claim of entitlement or a constitutionally protected property interest, in having their application approved. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). They claim that the Planning Commission's function in denying the application was a discretionary one in that it had to determine whether the proposal met all the requirements of the subdivision and zoning ordinances, including section 17–2 of the Code of the City of Rehoboth Beach that provides:

(a) The purpose of this Chapter shall be to provide rules, regulations and standards to guide land subdivision in the City in order to promote the public health, safety, convenience and the financial and general welfare of the City. It shall be administered to insure orderly growth and development, the conservation, protection and proper use of land, and adequate provision for vehicular and pedestrian traffic, utilities and services of and in the City.

(b) These Subdivision Regulations shall be considered the minimum requirements for the protection of the public health, safety and welfare of the City. Any action taken by the Planning Commission under the terms of this Chapter shall give primary consideration to the above mentioned matters and to the welfare of the entire community.

Accordingly, the defendants argue that, since the Commission had the discretion to consider the welfare of the entire community and thus was not consigned to a mere ministerial role, the plaintiffs had only a

1. The Goldbergs have since conceded in their brief that only 42 U.S.C.A. § 1983 applies to their claim. 42 U.S.C.A. § 1983 provides:

    **§ 1983. Civil action for deprivation of rights**

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

2. In his deposition, Gerald Goldberg has assessed the value of Lots 49 and 50 containing the Rectory building at $500,000 and Lot 2 as a separate building lot at $200,000 for a total of $700,000. After the denial of their application to partition, the plaintiffs sold the entire property for $550,000. Therefore, they are claiming damages in the amount of $150,000.

hope or expectation in having their application approved. The defendants cite *Francini v. Town of Farmington*, D.Conn., 557 F.Supp. 151 (1982), and a case cited therein in support of their contention.

The defendants' argument seems persuasive, but is countered by the plaintiffs' equally cogent argument that section 17–9(e) of the Code precludes any discretion on the part of the Commission. Section 17–9(e) states: "[p]artitioning applications which are found to meet all the requirements of this Chapter and the Zoning Ordinance, *shall* be approved by the Planning Commission." (Emphasis added). Plaintiffs contend that their proposed partition satisfied the frontage, area and setback requirements of the Code and, therefore, section 17–9(e) mandated approval of their application.

The discretionary versus ministerial conflict raised by the defendants unnecessarily confuses the issue of whether the plaintiffs had a property interest that could not be deprived without procedural due process. On closer examination, the authorities cited by the defendants are not very persuasive. *Francini* itself cites primarily unreported decisions from the United States District Court for the District of Connecticut in support of the proposition that as long as a commission retains some discretion in considering whether an application for subdivision satisfies the applicable regulations, an applicant's property interest, if any, does not amount to one deserving constitutional protection. *Id.* at 153–154. A more serious problem undermining the persuasive force of *Francini*, however, is the fact that the plaintiff there lacked title to the property, having only entered into a contract to purchase the land conditioned on approval of his application to subdivide. When his application was denied, his interest in the property expired, thus rendering moot his state court appeal from the commission's decision. *Id.* at 152–153. The federal court ruled that since the plaintiff's interest in the land never amounted to more than an expectation, when he was deprived of that interest, the Fourteenth Amendment did not require that he be accorded any process at all. *Id.* at 155.

In contrast, the plaintiffs in our case had title to the property in question at the time they applied for permission to partition. Thus, the issue squarely presented here is whether the plaintiffs' interest in approval of their application was one that was constitutionally protected.

■ The United States Supreme Court has stated that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). This range of interests is not infinite; however, property interests so protected are characterized as interests that a person has already acquired in specific benefits. *Id.* at 576, 92 S.Ct. at 2708.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity *for a person to vindicate those claims.*
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra,* [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)], had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the terms of eligibility. But we held that they had a

right to a hearing at which they might attempt to do so.

*Id.* at 577, 92 S.Ct. at 2709.

■ Relying upon the regulations found within the City Code, the plaintiffs sought approval of their application to partition their property from the Planning Commission. The plaintiffs interpreted the plain language of the ordinance defining sideyards as being satisfied by their proposed lot line. The Planning Commission, however, disagreed and denied approval in an action that was administrative in nature because it involved the application of the City's zoning laws to a particular parcel of land. *See Rogin v. Bensalem Township,* 3d Cir., 616 F.2d 680, 694 (1980), *cert. denied, Mark–Garner Assoc., Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). It is my opinion that the plaintiffs' expectation of approval of their partitioning request constituted a property interest within the scope of those interests protected by procedural due process. *See* "Developments in the Law—Zoning," 91 *Harv.L.Rev.* 1427, 1513–1523 (1978). However, this ruling does not reflect an opinion that the plaintiffs' partitioning request should have prevailed on the merits. It only leads to the next analysis, which is whether the plaintiffs were deprived of their property interest without procedural due process.

■ Before a governmental body may deprive a landowner of a property interest, it must provide due process. *Rogin,* 616 F.2d at 694. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). However, the exact requirements of due process depend upon the particular circumstances. In order to determine the requirements for any given situation, the United States Supreme Court has articulated a balancing test which considers three factors: first, the private interest affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value of any additional procedural safeguards; and third, the government's interest, including the various burdens the additional procedural requirements would entail. *Id.* at 424 U.S. at 335, 96 S.Ct. at 903. The following safeguards have been identified as elements of due process, any or all of which may be required in a given situation depending upon the outcome of the balancing test: (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result. *Rogin,* 616 F.2d at 694.

■ It is not necessary to go through an elaborate analysis balancing the factors above because it is clear from the record that plaintiffs were accorded all of the procedural safeguards. After proper notice was given, plaintiffs received a hearing before the Planning Commission at which time they were represented by counsel, made oral presentations, presented witnesses and written evidence in support of their position, cross-examined witnesses and received a decision based on the record and the reasons for which were clearly articulated.

Plaintiffs in their brief tentatively suggest that one member of the Planning Commission was motivated by personal bias in that he voted to deny the request because the property was located in "a very fine neighborhood." However, a fair review of the record leads me to conclude as a matter of law that the Commissioners were acting as neutral arbiters deliberating the application in consideration of the best interests of the community. Additionally, plaintiffs suggest that the process may have been tainted by public opinion and pressure. There was evidence that neighborhood residents opposed the plaintiffs' partitioning request and several people so testified before the City Commissioners. However,

nothing in the record suggests that plaintiffs received anything other than a fair hearing at which they had the opportunity to argue in favor of their application.

After denial of their application by the Planning Commission, plaintiffs appealed to the City Commissioners, who, after proper notice and a hearing, decided to affirm the Planning Commission's decision. Thereafter, plaintiffs appealed to this Court, but before this Court had the opportunity to rule on the City's interpretation of its ordinance, the plaintiffs rendered their appeal moot by selling their property.

The federal courts have dealt with similar claims brought by disappointed developers under 42 U.S.C. § 1983. In *Creative Environments, Inc. v. Estabrook,* 1st Cir., 680 F.2d 822, *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), plaintiffs, a real estate development corporation and its president, sued the various municipal authorities who had rejected their plans for a residential housing development. One of plaintiffs' claims was that their right to due process was violated by the town's "distortion of the existing statutory and regulatory scheme." *Id.* at 831. This argument was based on the alleged arbitrary misapplication of state law resulting, plaintiffs asserted, in denying them their right to conduct a legitimate business and make a profit. *Id.* The court found this claim to be without merit.

> As support for its position that a "distortion" of state law triggers constitutional rights, [plaintiff] relies on cases either involving procedural due process or on cases where the official conduct at issue was significantly more egregious than that alleged here..... Here it is merely indicated that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws. Apparently no rival developer advocating [plaintiff's] ambitious plan would have had more success than Barber. Plaintiffs would thus have us rule that the due process clause of the United States Constitution was violated when Bolton's Planning Board, for the purpose of protecting what it viewed as the town's basic character, openly interpreted state subdivision laws and a state court decision in ways which frustrated plaintiffs' large-scale housing development of a particular design.

> Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency ... to rise to the level of a due process violation. The authority cited by [plaintiff], as well as other cases, all suggest that the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate.

*Id.* at 831–833.

In our case, the plaintiffs had an opportunity to and did seek appellate review of the alleged "misapplication" of the setback ordinance by the City. However, by selling their property, plaintiffs mooted their appeal and the City's decision stands as final. Only plaintiffs' constitutional claims survive for review in this Court. The record reveals, however, no procedural irregularity, racial animus or outrageous conduct on the part of the defendants that rises to the level of a constitutional violation under § 1983. I find as a matter of law no merit to plaintiffs' claim of deprivation of their property interest without due process.

## IV. INVERSE CONDEMNATION

█ Before reaching the merits of plaintiffs' final claim, I must first rule on a procedural matter. Defendants contend that, since plaintiffs no longer have title to the property, they have lost their standing to assert a claim of inverse condemnation. Defendants essentially argue that plaintiffs have interrupted the orderly progression of the law by selling their property before this Court had a chance to rule on the validity of the City's action and thus,

assuming the City had effected a taking, have converted a temporary taking into a permanent one.

This argument is without merit. Plaintiffs owned the Rectory property at the time the City denied their application to partition and at the time this suit was filed. Plaintiffs' complaint alleges damages suffered by them as a result of the denial of their request. Assuming, *arguendo*, that the City had effected a taking, thus causing the plaintiffs to suffer an uncompensated loss, plaintiffs would retain a direct interest in an action for damages despite their subsequent sale of the property. *Cf. Win–Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 411 A.2d 144 (1980). Plaintiffs accordingly have standing to make this claim.

Plaintiffs allege that the denial of their application to partition their property into two separate building lots constitutes a *de facto* taking of their property by the City for public use without just compensation. In their view, they were totally deprived of the economic use and value of one of their two building lots that must now remain vacant as open space for the benefit of the neighborhood. They seek damages in inverse condemnation for what they characterize as a regulatory taking by the City, citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), and *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981).

■ The Fifth Amendment of the United States Constitution provides in relevant part that "private property [shall not] be taken for public use, without just compensation." This provision does not prohibit government interference with property rights per se, but rather secures compensation to the property owner in the event of an interference constituting a taking. *First Lutheran Church*, 482 U.S. at 315, 107 S.Ct. at 2386, 96 L.Ed.2d at 264. The question of what constitutes a "taking" for the purposes of the Fifth Amendment, however, depends upon essentially ad hoc, factual inquiries into the circumstances of a particular case, rather than any set formulation. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Two of the factors accorded significance by the United States Supreme Court in making this inquiry are the economic impact of the regulation on the claimant and the character of the governmental action, for example, whether or not there has been an actual physical invasion of the property by the government. *Id.* The Court has generally stated, however, that the application of a zoning law to a particular property effects a taking "if the ordinance does not substantially advance legitimate state interests, see *Nectow v. Cambridge*, 277 US 183, 72 LEd 842, 48 SCt 447 (1928), or denies an owner economically viable use of his land, see *Penn Central Transp. Co. v. New York City*, 438 US 104, 138, n 36, 57 LEd 2d 631, 98 SCt 2646 [2666, n. 36] (1978)." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

■ As stated above, the Goldbergs have not challenged the validity of the City's setback ordinance, but have objected to its asserted misinterpretation which resulted in the denial of their partitioning request. They allege, therefore, that they were deprived of all use and economic value of their property. The record, however, indicates that this claim is without foundation. The Goldbergs purchased their residential property for $470,000 in July, spent $80,000 on improvements and costs, and then sold the property, still improved by the Rectory and the garage-apartment, in December for $550,000. During the six-month period between purchase and sale, their partitioning request was denied. The complete absence of *any* change in the use or value of the property undermines plaintiffs' assertion that a "taking" by the City occurred.

The Goldbergs attempt to sidestep this damaging fact by arguing that they were deprived of all use and value of the second building lot to which they were allegedly entitled. This argument is unavailing. Traditional " 'taking' jurisprudence does

not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Penn Central Transportation,* 438 U.S. at 130, 98 S.Ct. at 2662. In that case, appellants claimed that the application of New York City's Landmarks Preservation Law had "taken" private property without compensation when the Landmarks Preservation Commission had rejected their plans to construct a multi-story office building over Grand Central Terminal. They argued that the airspace above the Terminal was a valuable property interest, that the Landmarks Law had deprived them of any gainful use of their air rights above the Terminal and effected a taking, thus entitling them to just compensation measured by the fair market value of these air rights. *Id.* The United States Supreme Court found "untenable" appellants' submission that they could establish a "taking" simply by showing that they had been denied the ability to exploit a property interest that previously they had believed was available. *Id.* Rather, the Court focused on the character of the government action and on the nature and extent of the interference with rights in the parcel *as a whole. Id.* at 130–131, 98 S.Ct. at 2662–2663.

In this case, the government action complained of was simply a denial of a request to partition and not a physical invasion of the Goldbergs' property by the City. *See id.* at 124, 98 S.Ct. at 2659 (a "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government). *See also State v. Putman,* Del.Super., 552 A.2d 1247 (1988). The use and value of the property as a whole did not change as a result of the City's action. Moreover, while the Goldbergs were denied the opportunity to partition their property according to the particular design submitted by them, there is no reason to believe that they would have been denied all rights to a second building lot, had they retained the property and submitted another request to partition that met the requirements of the City's setback ordinance. Accordingly, plaintiffs have failed to convince the Court that a "taking" by the City has occurred. This conclusion renders further discussion of the plaintiffs' action for declaratory judgment unnecessary.

For all the above reasons, the defendants' motion for summary judgment is granted and the plaintiffs' cross motion for summary judgment is denied.

IT IS SO ORDERED.

APPENDIX A

COLUMBIA AVE.

RE-PARTITION PLAN

LOTS #2, #49 & #50

REHOBOTH BEACH CAMP
MEETING ASSOCIATION

Prepared for

GERALD GOLDBERG AND L & J. ASSOCS.

Located in

CITY of REHOBOTH BEACH

LEWES & REHOBOTH HUNDRED – SUSSEX COUNTY – DELAWARE

June 16, 1986

COAST SURVEY

P.O. BOX 490

REHOBOTH, DE. 19971