Hillsborough
No. 91-049

DONALD R. TESSIER, EXECUTOR

v.

TOWN OF HUDSON

December 11, 1991

*Prunier, Leonard & Bolton P.A.*, of Nashua (*Thomas J. Leonard* and *Steven A. Bolton* on the brief, and *Mr. Leonard* orally), for the plaintiff.

*John J. Ratigan*, of Hudson, town attorney, by brief and orally, for the defendant.

BROCK, C.J. The Town of Hudson (town) appeals from an order of the Superior Court (*Dalianis*, J.) vacating decisions of the Hudson Zoning Board of Adjustment (ZBA) which denied the plaintiff either a building permit or a variance. We affirm.

The facts are undisputed. The town adopted a zoning ordinance in 1942 which requires a building permit prior to making improvements on any land in the town. The ordinance, which originally had no minimum lot size requirement, now requires either an area of 30,000 square feet with 120 feet of frontage, for lots with public water and

town sewer, or an area of 45,000 square feet with 150 feet of frontage, for lots lacking either public water or town sewer.

The plaintiff is the executor of an estate which owns several dozen "camp lots" laid out on 76,000 square feet of land in Hudson. He agreed to sell the land to a builder, contingent on obtaining building permits. The builder planned to consolidate the numerous camp lots into six larger lots, one 26,000 square feet in size (on which is located a pre-existing residential home) and five each 10,000 square feet in size, and to construct single family residences on the smaller lots.

Although the zoning administrator had previously issued numerous building permits to several different builders for similar lots in the immediate vicinity of the plaintiff's land, he denied Tessier's applications for building permits on October 21, 1988. The plaintiff appealed to the ZBA following the denial of the building permits, but to no avail. As an alternative, the plaintiff sought a variance, but it was also denied by the ZBA.

The plaintiff appealed the ZBA's rulings to the superior court, which consolidated the appeals. Upon finding that the town had a *de facto* policy of issuing permits to non-conforming lots, the court ruled that such policy could only be changed by the voters of the town, citing our opinion in *Win-Tasch Corporation v. Town of Merrimack*, 120 N.H. 6, 411 A.2d 144 (1980). The court further ruled that the denial of the variance was unreasonable, since the "ordinance's lot size requirement [did] not reflect the reality of the area around petitioner's property," and that the plaintiff was entitled to use the non-conforming lots as proposed.

On appeal to this court, the town challenges these rulings on several grounds. The essence of the town's argument is that its former zoning administrator was a "renegade," who issued permits contrary to the ordinance, and that at its first possible opportunity the ZBA acted to have such permits refused. The town argues that its present effort to preclude the issuance of permits for construction on substandard lots represents only the correction of the misapplication of the town's ordinance, not a change of policy. The town further disputes the trial court's findings on the ground of insufficiency of the evidence.

 The trial court's finding that the former zoning administrator's actions constituted a *de facto* policy of issuing permits for substandard lots near plaintiff's property will not be disturbed unless it was clearly made without evidence. *Chagnon Lumber Co., Inc. v. DeMulder*, 121 N.H. 173, 175, 427 A.2d 48, 50 (1981). "Our standard of

review of the trial court's decision is whether the evidence reasonably supports the trial court findings, not whether we would find as the trial court did." *Rowe v. Town of North Hampton*, 131 N.H. 424, 428, 553 A.2d 1331, 1334 (1989) (citation omitted). In this case, adequate evidence was presented to the trial court to warrant such a finding.

In 1986, William R. Drescher, the town attorney, sent a memorandum to the town suggesting that lots in existence prior to 1942 were not subject to the ordinance restrictions due to a "grandfather" clause. Following Attorney Drescher's memorandum, various zoning administrators, from 1986 to 1988, issued building permits on substandard lots, if those lots existed prior to 1942. During this time, in excess of thirty-six building permits were issued to owners of substandard lots, most of them within three blocks of the land owned by plaintiff's decedent.

The town argues that the issuance of these permits was an *ultra vires* act by former zoning administrators, who took it upon themselves to issue permits contrary to the zoning ordinance, and that the town was merely attempting to correct the problem. Such a position is hard to fathom, however, since different zoning administrators wrote to applicants, specifically stating that certain substandard lots were exempt from the zoning ordinance under the "grandfather" clause.

This case arises from the town's action to change this situation in 1988, when Bruce Woodruff was named as the new zoning administrator. At the time, the ZBA met with Woodruff to explain that, contrary to the town attorney's opinion, its interpretation of the zoning ordinance did not recognize a "grandfather" exception for substandard lots simply because they were in existence prior to 1942. Pursuant to this interpretation, the ZBA "urged" Woodruff to refrain from issuing permits for such lots, and he later denied the plaintiff's request for building permits.

■ The town may not change the practice of issuing permits to substandard lot owners merely by requesting that the new zoning administrator ignore past policies. The repeated issuance of building permits for substandard lots that existed prior to 1942 represents an existing policy. "If the 'administrative gloss' placed upon the ['grandfather'] clause . . . is to be changed, the voters[,] . . . not the zoning board, must change it." *Win-Tasch*, 120 N.H. at 10, 411 A.2d at 147. Therefore, since the evidence supports the trial court's finding of a *de facto* policy of issuing building permits for substandard lots, the

town may not simply change its interpretation of the "grandfather" clause and deny the applicant a building permit for his substandard lot.

In addition, there is evidence to indicate that the town had attempted to change the "grandfather" clause, but was unable to get an amendment approved. The inability of town officials to accomplish a change in the Hudson Zoning Ordinance, coupled with the fact that the voters twice amended other parts of the ordinance, only serves to strengthen our conclusion that the "grandfather" clause protects the plaintiff's property. *See Win-Tasch v. Town of Merrimack*, 120 N.H. at 10, 411 A.2d at 146–47. This evidence further supports the finding that a *de facto* policy existed, thereby entitling the plaintiff to the same interpretation of the ordinance as other similarly situated applicants had received.

■■ Finally, the defendant contends that since the plaintiff can consolidate lots and divide his property to yield a conforming residential lot, denial of a variance was proper. A zoning ordinance must reflect the character of the neighborhood. *Belanger v. City of Nashua*, 121 N.H. 389, 393, 430 A.2d 166, 169 (1981). The record is replete with evidence indicating that the area surrounding the Tessier property has been improved in violation of the Hudson Zoning Ordinance lot size requirements. The trial court's conclusion that the ZBA unreasonably denied the plaintiff's request for a variance was within its discretion and was sufficiently supported by the evidence. We therefore affirm.

*Affirmed.*

All concurred.