Cheshire
No. 93-278

PETER D. HANSEL *& a.*

v.

CITY OF KEENE

December 21, 1993

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Andrew B. Eills* on the brief, and *David Garfunkel* orally), for the plaintiffs.

*Bell, Falk & Norton, P.A.*, of Keene (*Arnold R. Falk* on the brief and orally), for the defendant.

*Rath, Young, Pignatelli and Oyer, P.A.*, of Concord (*Gregory W. Swope* and *Diane Murphy Quinlan* on the brief, and *Mr. Swope* orally), for the intervenor, Konover Development Corporation.

THAYER, J.   The plaintiffs, who are citizens of Keene, appealed a decision by the City of Keene Planning Board (planning board) to the superior court. The planning board had granted conditional approval of intervenor Konover Development Corporation's (Konover) site plan for a major commercial retail shopping center. The Superior Court (*Brennan*, J.) ruled that the planning board acted unreasonably and illegally because one of the conditions it imposed on Konover was less stringent than the minimum requirements of the Keene zoning ordinance. Konover now appeals the trial court's ruling. We affirm.

On December 1, 1986, Konover applied to the planning board for site plan review of a retail mall project to be developed on a sixty-two acre tract in Keene. The planning board approved Konover's application on July 6, 1987, subject to twenty-seven conditions. Condition #17, the sole condition at issue before us, provided:

"Prior to issuance of a building permit, Konover shall certify by a qualified hydrologist that development of the site will comply with the City's requirement that proposed fill and construction will not have a significant impact on the flood plain. . . ."

On December 14, 1992, having determined that all conditions precedent (including condition #17) had been fulfilled, the planning board granted final approval to Konover's site plan. The plaintiffs appealed the planning board's decision to the superior court pur-

suant to RSA 677:15, I (Supp. 1992). The plaintiffs asserted, in part, that the planning board acted unreasonably and illegally in formulating condition #17 because the condition did not require strict compliance with section 24.F.3 of the city's then-applicable zoning ordinance.

Section 24.F.3 of the Keene Zoning Ordinance, as adopted in 1983, prohibits new construction within the floodplain unless

> "it is demonstrated that the cumulative effect of the proposed development, when combined with all other existing and anticipated development, will not increase the water surface elevations of the base flood at any point within the community."

The city has since changed its floodplain ordinance. In 1990, the city passed legislation allowing development in the floodplain, while still requiring developers to avoid negative floodplain impacts through compensatory flood storage. Although the 1990 ordinance modifies the rigid requirements of section 24.F.3 of the 1983 ordinance, the parties do not contend that it retroactively applies to this case. *See* RSA 676:12, V (Supp. 1992).

Konover intervened in the trial court proceeding and objected to the plaintiffs' appeal, arguing, in part, that the city had never strictly applied the base flood impact requirement of section 24.F.3 to any proposed development, and that such systematic nonenforcement precluded the city from strictly applying it in this instance.

By order dated March 18, 1993, the trial court rejected Konover's assertions, ruling that condition #17 was unreasonable and illegal because its "no significant impact" standard was less restrictive than the plain meaning of section 24.F.3, which prohibits development that would cause any increase in the base flood level or elevation. The court further ruled that the 1983 floodplain ordinance must be strictly enforced against Konover for purposes of site plan review and for purposes of obtaining a building permit.

Our standard of review of a trial court's decision strongly favors upholding that decision unless it is unsupported by the evidence or is legally erroneous. *See Smith v. Town of Wolfeboro*, 136 N.H. 337, 342, 615 A.2d 1252, 1255 (1992). Our function on appellate review "is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge." *Liberty Mut. Ins. Co. v. Custombilt, Inc.*, 128 N.H. 167, 170, 512 A.2d 1098, 1100 (1986) (quotation omitted).

The trial court found that in its effort to enforce section 24.F.3, the planning board historically disregarded the plain meaning of the

ordinance and applied base flood elevation standards ranging from no enforcement at all, to "not be made noticeably worse," to "not . . . greater than one foot." The court also found that out of twenty or so applicants for projects in the floodplain, only four, including Konover, were required to adhere to these inconsistent interpretations of section 24.F.3. Based on the evidence, the trial court ruled that the planning board's enforcement of section 24.F.3 had been arbitrary and inconsistent, and that the planning board lacked the legal authority to set a less restrictive standard than section 24.F.3 requires. We find no error in the trial court's conclusion that the planning board lacked the legal authority, as defined by the plain language of the zoning ordinance, to impose a floodplain standard less restrictive than that provided for under the ordinance. *See Cesere v. Town of Windham,* 121 N.H. 522, 523, 430 A.2d 1134, 1135 (1981); *cf. Morin v. City of Somersworth,* 131 N.H. 253, 257, 551 A.2d 527, 530 (1988) (confirming a planning board's authority to decline conditional approval of a site plan that does not comply with the express terms of the zoning ordinance).

Konover argues that, in light of the planning board's alleged "systematic nonenforcement" of section 24.F.3, the trial court erred in failing to rule that the planning board was estopped from imposing on Konover the strict standard set forth in section 24.F.3. Konover relies primarily on our decision in *Alexander v. Town of Hampstead,* 129 N.H. 278, 525 A.2d 276 (1987), for the proposition that "a pattern of nonenforcement . . . so systematic as to constitute ratification of a policy of nonenforcement" may serve to "estop a municipality's subsequent enforcement of the ordinance." *Id.* at 283, 525 A.2d at 280 (quotation omitted); *see also Devaney v. Town of Windham,* 132 N.H. 302, 307–08, 564 A.2d 454, 457 (1989).

■ Although municipal corporations may indeed be subject to estoppel, the law does not favor its application against municipalities. *Turco v. Town of Barnstead,* 136 N.H. 256, 261, 615 A.2d 1237, 1239 (1992). This is especially true when a valuable public interest may be jeopardized by applying the doctrine of estoppel against the municipality. *Cf. City of Concord v. Tompkins,* 124 N.H. 463, 472–73, 471 A.2d 1152, 1157–58 (1984) (noting that other jurisdictions employ an equity balancing test to decide whether to estop the government, yet holding that the facts presented did not necessitate such an analysis).

■ The public policy considerations underlying the city's strict floodplain regulations are found in section 24.D of the 1983 ordinance:

"1. To reduce the hazards of floods upon the public health, safety and general welfare.

2. To protect floodplain or floodway occupants from a flood that is or may be caused by their own land use.

3. To protect the public from the burden of extraordinary financial expenditures for flood control relief.

4. To protect the capacity of the floodway and floodplain areas to absorb, transmit and store runoff.

5. To minimize prolonged business interruptions.

6. To minimize damage to public facilities, utilities such as water and gas mains, electric, telephone and sewer lines, streets and bridges located in areas of special flood hazard.

7. To insure that those who occupy the areas of special flood hazard assume responsibility for their actions."

These objectives, coupled with section 24.F.3 itself, reveal an understandable concern among city officials that *any* water surface elevation increase in the floodplain could, at minimum, strain city resources and impose unnecessary hardship on city residents. The planning board's "significant impact" standard nevertheless displays a tolerance for increases of the water surface elevation in the floodplain that, in our view, could conceivably jeopardize the public policy interests detailed by the ordinance. We therefore refuse to overrule the trial court's determination that the planning board must apply the strict language of section 24.F.3 against Konover, and hold that the concept of municipal estoppel is inapplicable to this case.

In addition, we decline Konover's invitation to extend our dicta in *Alexander* regarding systematic nonenforcement to the present case. Although we have noted that a finding of systematic nonenforcement "is conceivable," *Alexander*, 129 N.H. at 283, 525 A.2d at 280, we have yet to apply it. *See id.* at 284, 525 A.2d at 280; *see also Devaney*, 132 N.H. at 307–08, 564 A.2d at 457. We leave open at this time the question of when systematic nonenforcement may be an applicable legal doctrine, but do hold here that a finding of systematic nonenforcement under the circumstances of the present case is "inconceivable."

A comparison of this case with *Alexander* is instructive. The zoning ordinance at issue in *Alexander* restricted houses to one and one-half stories, thereby reflecting predominantly aesthetic concerns, such as preservation of views, access to light, and architectural consistency. *Alexander*, 129 N.H. at 280, 525 A.2d at 277. In contrast, the zoning ordinance in the present case reflects far more significant

concerns, such as protecting the public safety and minimizing the potentially disastrous economic impact of floods. Because the public welfare could be seriously threatened by the planning board's lax interpretation of section 24.F.3, we hold that the doctrine of systematic nonenforcement cannot estop the city from strictly enforcing its ordinance. Thus, because systematic nonenforcement is inapplicable to this case, the trial court did not err in failing to rule on the issue.

■ Next, Konover argues that the trial court erred in holding that the rule of statutory construction known as "administrative gloss" was inapplicable to section 24.F.3. An administrative gloss is placed on an ambiguous clause of a zoning ordinance when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. *See Win-Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 9–10, 411 A.2d 144, 146–47 (1980); *see also Tessier, Ex'r v. Town of Hudson*, 135 N.H 168, 170–71, 599 A.2d 1244, 1246 (1991); P. LOUGHLIN, 15 NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 6.02, at 84–85 (2d ed. 1993). If an administrative gloss is indeed found to have been placed on a clause, the municipality may not change such a *de facto* policy, in the absence of legislative action, because to do so would presumably violate legislative intent. *See Tessier*, 135 N.H. at 170–71, 599 A.2d at 1246; *Win-Tasch*, 120 N.H. at 9–10, 411 A.2d at 146–47.

■ The facts of the present case belie Konover's assertion that an administrative gloss had been placed over section 24.F.3 of the 1983 Keene zoning ordinance. There is nothing ambiguous about section 24.F.3; its intended purpose, to prevent any increase in the water surface elevation of the floodplain, is clear. Furthermore, as the trial court found, the planning board's interpretation of section 24.F.3 in the years following its adoption was anything but consistent. The planning board applied section 24.F.3 in only four out of approximately twenty instances, and when it did apply section 24.F.3, it did so in an arbitrary, inconsistent manner. Finally, none of the projects to which section 24.F.3 had previously been applied is "similarly situated" to any other project in terms of size or potential impact on the floodplain. Indeed, the trial court found that the Konover project, a mammoth shopping mall that would cover sixty-two acres of the floodplain, was not comparable to other smaller projects in the floodplain. Therefore, the planning board's various interpretations of section 24.F.3 do not constitute a *de facto* policy sufficient to warrant a finding of administrative gloss, and the trial court's holding to that effect is without error.

■■ Finally, Konover argues that the trial court erred in ruling that application of the 1983 floodplain ordinance would not violate Konover's right to equal protection as guaranteed by the New Hampshire Constitution. The trial court's order and rulings of law, however, show that Konover never raised this issue at trial, nor did Konover ever request such a ruling of law. We will not review on appeal constitutional issues not presented below. *See State v. Kiewert*, 135 N.H. 338, 348, 605 A.2d 1031, 1037 (1992). In addition, having already held that the trial court did not err in requiring the planning board to adhere to the strict terms of section 24.F.3 for the purposes of site plan review, we cannot find error with the trial court's parallel requirement that the city building inspector must also ensure strict compliance with section 24.F.3.

*Affirmed.*

All concurred.