NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
Case No. 2023-0329
Citation: Brown v. Grafton Cnty. Dep't of Corr., 2025 N.H. 2

JOSEPH A. BROWN

v.

GRAFTON COUNTY DEPARTMENT OF CORRECTIONS

Argued: November 7, 2024
Opinion Issued: January 10, 2025

Joseph A. Brown, self-represented party, on the brief and orally.

Sheehan Phinney Bass & Green, PA, of Manchester (Elizabeth A. Bailey and Autumn D. Klick on the brief, and Elizabeth A. Bailey orally), for the defendant.

DONOVAN, J.

[¶1] The plaintiff, Joseph A. Brown, appeals an order of the Superior Court (Bornstein, J.) granting judgment in favor of the defendant, the Grafton County Department of Corrections, in the plaintiff's action seeking declaratory judgment and injunctive relief pursuant to RSA chapter 91-A (2023 & Supp. 2023), New Hampshire's Right-to-Know Law, to compel disclosure of

video footage from the Grafton County House of Corrections depicting meal preparations and mealtime, among other things. We vacate and remand.[1]

I. Facts

[¶2] The following facts are supported by the record or are otherwise undisputed by the parties. In 2020, the plaintiff — acting initially through counsel and later, without counsel — requested the disclosure of several categories of records under RSA chapter 91-A. The requested records included, as relevant here, "[v]ideo from all kitchen or other cameras showing meal preparation from April 29, 2019 to present" and "[v]ideo of all cameras showing mealtime in any unit in which [the plaintiff] was resident from April 29, 2019 to present." The defendant denied the plaintiff's request for video footage "for security reasons" but provided him with non-exempt requested materials and an itemized Vaughn index. See Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 548 (1997) (explaining that "[t]he Vaughn index is a procedure developed by the federal courts to effectuate the goal of broad disclosure of public documents and assist trial courts in cases involving a large number of documents"); see also Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973). In the Vaughn index, the defendant explained its reasoning for denying the plaintiff's request for video footage. Regarding the request for meal preparation footage, the defendant claimed that "public release of perspective and angles from cameras would jeopardize the security of the facility." Regarding the plaintiff's request for mealtime footage, the defendant asserted that "public release of such video would constitute an invasion of privacy of inmates" and "release of camera perspectives would potentially threaten the security of the facility."

[¶3] In January 2021, the plaintiff filed a complaint for declaratory and injunctive relief in superior court under RSA 91-A:4 (2023), seeking, among other things, a court order to compel the defendant "to produce all records responsive to [the plaintiff's] requests." In February 2021, the defendant sought a "declaratory judgment that the [plaintiff's] request under RSA 91-A for video from the Grafton County House of Corrections is exempt from disclosure under RSA 91-A."

[¶4] The Superior Court (MacLeod, J.) held a preliminary hearing in March and granted the defendant's motion for expedited declaratory judgment in April 2021, reasoning that the "public interest in disclosing the [House of Corrections] footage is, at best, attenuated and based upon the plaintiff's

---

[1] The plaintiff's brief identifies 20 separate questions on appeal. We construe several of these questions as challenging the superior court's ruling denying the plaintiff's motion to compel video footage. One question pertains to the plaintiff's request for his costs, which is not ripe in light of our remand of the video footage issue. We conclude that the plaintiff's remaining questions are not sufficiently developed for our review and we decline to address them.

subjective desire for the information" and "inmates housed at [the House of Corrections] have a cognizable privacy interest in disclosure that outweighs such a speculative public interest." The court added that "disclosure of the . . . footage will not tell the public anything directly about what the [House of Corrections] is 'up to' rather it will subject the inmates of the [House of Corrections] to an unnecessary invasion of privacy." The court also stated that public disclosure could "pose a clear danger to both the inmates housed at the [House of Corrections] and the law enforcement officers tasked with running the [House of Corrections]."

[¶5] The plaintiff filed a motion for reconsideration, which the court denied. In July 2021, the plaintiff appealed the trial court's April 7, 2021 order granting the defendant's request to exempt video footage from disclosure.[2] We dismissed the appeal without prejudice. Between July 2021 and July 2022, the plaintiff filed three motions to compel production of uncontested documents and a Vaughn index, to which the defendant objected. In August 2021, the defendant filed a motion to dismiss the plaintiff's complaint. The court held a hearing on the pending motions in September 2022. In November 2022, the court issued an order denying the plaintiff's motions to compel and granting the defendant's motion to dismiss all but one of the counts of the plaintiff's complaint. The plaintiff again filed a motion to reconsider, which the court denied.

[¶6] In February 2023, the defendant moved for summary judgment on the remaining count (Count V) in the plaintiff's complaint, in which the plaintiff asked the court to compel production of all requested documents. In April 2023, the Superior Court (Bornstein, J.) granted summary judgment on the final count in favor of the defendant. As to the plaintiff's outstanding requests, the trial court reasoned that the defendant "either initially provided responsive records and then supplemented its disclosure," "did not find any responsive records," or did not disclose because the court determined the records were exempt under RSA 91-A:5, IV (2023). The plaintiff filed a motion to reconsider, which the court denied. This appeal followed.

II. Analysis

[¶7] On appeal, the plaintiff contends, among other things, that the trial court erred by ruling in its April 2021 order that the requested video footage is

---

[2] In an order dated October 8, 2021, this court denied the defendant's request to treat the appeal as a Rule 11 petition for original jurisdiction, granted the request to seek a Superior Court Rule 46(c) order from the trial court, vacated the order accepting the appeal as a mandatory appeal, and ruled that the appeal was dismissed without prejudice to a subsequent appeal either upon conclusion of the entire case in the trial court or by a properly filed appeal in accordance with Superior Court Rule 46 and Supreme Court Rules.

exempt under RSA 91-A:5, IV. Specifically, he contends that the trial court failed to "review whether records were of sufficient detail to implicate privacy interests" that would justify exemption under RSA 91-A:5, IV or to "review whether records could be redacted to allow release."

[¶8] We defer to the trial court's findings of facts if they are supported by the evidence and are not erroneous as a matter of law. Provenza v. Town of Canaan, 175 N.H. 121, 124 (2022). We review the interpretation of the Right-to-Know Law and its application to undisputed facts de novo. Michaud v. Town of Campton Police Dep't., 176 N.H. 542, 546 (2024), 2024 N.H. 19, ¶9.

[¶9] RSA 91-A:4, I, provides that "[e]very citizen . . . has the right to inspect all governmental records . . . except as otherwise prohibited by statute or RSA 91-A:5." RSA 91-A:4, I. RSA 91-A:5 establishes public records exempt from disclosure, including "confidential, commercial, or financial information . . . whose disclosure would constitute an invasion of privacy." RSA 91-A:5, IV; see Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020). To best effectuate the statutory and constitutional objectives of facilitating public access to documents, we construe the exemptions narrowly. CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015). When a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure. Prof'l Firefighters of N.H. v. Local G'vt Ctr., 159 N.H. 699, 707.

[¶10] When determining whether the confidentiality exemption applies, the court assesses: (1) whether the information sought is confidential, commercial, or financial; and (2) whether disclosure would constitute an invasion of privacy. Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020). Courts must engage in a three-step analysis when considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV. Provenza, 175 N.H. at 130. This test applies to all categories of records enumerated in RSA 91-A:5, IV. Id. Because the plaintiff's appeal challenges the trial court's ruling that disclosure would constitute an invasion of privacy and not the confidentiality of the footage, we begin with the privacy inquiry. See Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 555 (2002) (proceeding directly to the privacy analysis after "assuming but not deciding that the [records] are confidential").

[¶11] First, the court evaluates whether there is a privacy interest that would be invaded by disclosure. Id. If no privacy interest is at stake, then the Right-to-Know Law mandates disclosure. N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 110 (2016). Second, the court assesses the public interest in disclosure. Id. Third, the court balances the public interest in disclosure against the government's interest in nondisclosure and the individual's interest in nondisclosure. Id. "Even information imbued with a legitimate privacy interest is subject to disclosure if, on balance, that interest

4

is outweighed by the public's cognizable interest in disclosure." Reid v. N.H. Att'y Gen., 169 N.H. 509, 531 (2016). Accordingly, a fact-specific inquiry is required in each case. Id.

[¶12] On appeal, the plaintiff contends that the "the trial court erred by failing to consider whether records actually contained enough detail to implicate privacy interests." In its motion for expedited declaratory judgment, the defendant asserted that inmates maintain a privacy interest in the meal preparation and mealtime footage that protects against "having their every action exposed to the public." Generally, we look to the content of the record to evaluate whether disclosure would release personally identifying information or subject an individual to embarrassment or reputational harm to determine whether the record implicates privacy interests. Am. Civil Liberties Union of N.H., 176 N.H. at 312; see, e.g., Provenza, 175 N.H. at 130 (finding that a privacy interest in a police report was "not weighty" because the report did not "reveal intimate details of [the individual's] life"). Here, the trial court granted the motion to exempt the footage after a limited hearing, at which the defendant provided no specific information about the actual content, degree of clarity, or level of detail depicted in the video footage, and without viewing any portion of the video.

[¶13] Without a more detailed record, the trial court lacked sufficient information to conduct the fact-specific analysis necessary to determine whether the footage implicates a privacy interest by depicting inmate or staff faces, containing other personally identifying characteristics, or otherwise subjecting individuals depicted to embarrassment or reputational harm. Therefore, we conclude that the trial court erred by ruling that "inmates housed at the [House of Corrections] have a cognizable privacy interest" without viewing at least some portion of the footage. See N.H. Right to Life, 169 N.H. at 114 (holding that "absent further fact-finding by the trial court, we cannot determine whether those individuals [shown] have a heightened privacy interest at stake in the nondisclosure of the DVD footage").

[¶14] The defendant also maintains that the trial court properly recognized that the footage implicates a privacy interest held by inmates and staff because disclosure would raise security concerns. In N.H. Right to Life, we acknowledged that "individuals have an even stronger privacy interest in avoiding physical danger than in the accepted privacy interest in the nondisclosure of their names and addresses." N.H. Right to Life, 169 N.H. at 118 (2016) (quotation omitted). Here, the court found that "public disclosure of requested [House of Corrections] video footage, which include the layout of the prison facilities, could pose a clear danger to both the inmates housed at the [House of Corrections] and the law enforcement officers tasked with running the [House of Corrections]." But the trial court made this finding without viewing the footage and after a limited hearing, where no testimony established that the zoom or angle of the footage, for example, actually depicted the layout

5

of the prison facilities.  Therefore, we find this ruling was based upon an insufficient record and premature.

III. Conclusion

[¶15] Absent additional information about the content of the video footage, the trial court lacked a sufficient basis to assess whether the records implicate privacy concerns.  See id.  Therefore, we vacate and remand for the trial court to conduct additional fact-finding by reviewing at least some portion of the footage and by conducting any additional proceedings deemed necessary.  To the extent that the trial court determines a privacy interest is at stake and proceeds to evaluate the public interest in disclosure, we note that the individual's motives in seeking disclosure are irrelevant, Lambert v. Belknap County Convention, 157 N.H. 375, 383 (2008), and the inquiry turns on whether the disclosure informs the public about the conduct and activities of the government.  Id.  In any additional proceedings, the parties may also address whether redaction would be possible, appropriate or necessary to permit disclosure without compromising any privacy interests implicated, see id. at 115, and whether the plaintiff is entitled to costs pursuant RSA 91-A:8 (2023).  We decline to address the plaintiff's remaining arguments because they are not sufficiently developed and are deemed waived.  State v. Blackmer, 149 N.H. 47, 49 (2003) ("Thus, we confine our review to only those issues that the defendant has fully briefed.").  Accordingly, we uphold the trial court's rulings on the plaintiff's remaining claims.

Vacated and remanded.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.

6