Carroll
No. 2005-505

MARK HOUNSELL & a.

v.

NORTH CONWAY WATER PRECINCT

Argued: March 9, 2006
Opinion Issued: August 1, 2006

*Upton & Hatfield, LLP*, of North Conway (*Robert Upton, II* on the brief and orally), for the petitioners.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Kathleen C. Peahl* on the brief and orally), for the respondent.

DALIANIS, J. The petitioners, Mark Hounsell and Joseph Smith, appeal an order of the Superior Court (*O'Neill*, J.) denying their request for disclosure of certain documents under the control of the respondent, North Conway Water Precinct (precinct). We affirm.

*I. Background*

The following facts were found by the trial court or appear on the record. In June 2003, the precinct, which is governed by a three-member board of commissioners, retained Municipal Resources, Inc. (MRI) to investigate the alleged mismanagement of the precinct. The precinct disclosed the resulting MRI report to the public. In November 2003, the New Hampshire Attorney General initiated an investigation concerning allegations of criminal behavior described in the MRI report to determine "whether the conduct of any public official or employee of [the precinct] warranted the commencement of criminal charges for theft, public corruption, or witness tampering."

In July 2004, an employee of the precinct alleged that he had been threatened and harassed by a co-worker, petitioner Smith. The precinct, through its legal counsel, Andrea Johnstone, retained Jack Hunt and John Alfano to investigate the complaint of harassment. Hunt and Alfano conducted interviews of each precinct employee as part of their investigation. During the investigation, the precinct placed Smith on paid leave. While some employees were reluctant to participate in the investigation, Commissioner James Umberger advised them and their union representative, Brian Mitchell, that there would be no retaliation for their participation, and he encouraged them to tell Hunt and Alfano "whatever was on their minds." The precinct permitted Mitchell to be present during the interviews. It also permitted petitioner Hounsell and another individual, Ted Sares, neither of whom were employees or agents of the precinct, to be present during some of the interviews at the request of the employees.

Following the conclusion of the interviews, Hunt and Alfano prepared a report in which they summarized the investigation and made findings and recommendations (Hunt-Alfano report). The record does not indicate the date of the report. Johnstone instructed them to release the report only to her; she, in turn, provided the report to the commissioners. Without the knowledge or authorization of the commissioners, and contrary to Johnstone's instructions, Alfano permitted Mitchell to review a copy of the Hunt-Alfano report. The precinct took no disciplinary action against Smith or any other employee as a result of the investigation and the Hunt-Alfano report, and the commissioners subsequently issued a press release reporting that decision.

On February 23, 2005, the attorney general released her report to the public, concluding that there was insufficient evidence to commence a criminal prosecution.

The petitioners repeatedly requested a copy of the Hunt-Alfano report. On April 7, 2005, the precinct issued an official denial of their request, stating that the report was a "confidential personnel document," exempt from disclosure under RSA chapter 91-A. On April 25, 2005, the petitioners filed in the trial court a petition seeking access to the Hunt-Alfano report, all notes and transcripts recorded in connection with the report, and all minutes of non-public sessions at which the commissioners discussed the report, as well as an award of costs and attorney's fees pursuant to RSA 91-A:8. After a hearing, at which the parties made offers of proof, the trial court denied the petition.

On appeal, the petitioners contend that the trial court erred by concluding that the report was exempt from disclosure under RSA 91-A:5, IV and by refusing to award attorney's fees under RSA 91-A:8. They also argue that the precinct was "estopped" from asserting the RSA 91-A:5, IV exemption.

## II. Right-to-Know Law

We first examine whether the trial court erred by concluding that the Hunt-Alfano report was exempt from public disclosure under RSA chapter 91-A, the Right-to-Know Law. Because the interpretation of a statute is ultimately a question of law for this court, we review the trial court's interpretation *de novo. Prof'l Firefighters of N.H. v. HealthTrust,* 151 N.H. 501, 503 (2004). The Right-to-Know Law provides that "[e]very citizen . . . has the right to inspect all public records, including minutes of meetings of the bodies or agencies . . . except as otherwise prohibited by statute or RSA 91-A:5." RSA 91-A:4, I (Supp. 2005). It is undisputed that the precinct is a public body subject to the Right-to-Know Law. Among other things, however, RSA 91-A:5, IV (Supp. 2005) exempts from disclosure "[r]ecords pertaining to internal personnel practices." We have recognized that the traditional balancing test employed in Right-to-Know cases, *see, e.g., Chambers v. Gregg,* 135 N.H. 478, 481 (1992), is not necessary where "the legislature has plainly made its own determination that certain documents are categorically exempt." *Union Leader Corp. v. Fenniman,* 136 N.H. 624, 627 (1993). However, we generally interpret the exemptions in RSA chapter 91-A restrictively to further the purposes of the Right-to-Know Law. *Id.* at 626.

The trial court concluded that the investigation that generated the Hunt-Alfano report concerned an "internal personnel practice," and, thus, exempted the report from disclosure under RSA 91-A:5, IV. The trial

court, relying upon *Fenniman*, reasoned that "[h]ad Smith not been cleared as a result of the investigation, the [precinct] would likely have taken disciplinary action against him." In *Fenniman*, we reviewed whether the trial court properly granted the Union Leader's petition, under RSA chapter 91-A, for access to certain investigatory documents under the control of the Dover Police Department. *Id.* at 625. The department had previously released to the newspaper its "Internal Investigation Disposition Forms," detailing general facts underlying the internal investigation of whether a department lieutenant made harassing phone calls. *See id.* at 625-26. The newspaper, however, sought additional access to the department's "internal police investigatory files," which included the department's memoranda and other records compiled during the internal investigation. *Id.* at 626. We concluded that such files pertained to "internal personnel practices" because "they document[ed] procedures leading up to internal personnel discipline, a quintessential example of an internal personnel practice." As such, we held that the files were exempt from disclosure pursuant to RSA 91-A:5, IV. *Id.* at 627.

We agree with the trial court that the Hunt-Alfano report concerned "internal personnel practices." It is undisputed that the precinct retained Hunt and Alfano to investigate a complaint that Smith had threatened and harassed a co-worker. During the investigation, the precinct placed Smith on paid leave, and the investigation could have resulted in disciplinary action. Thus, as in *Fenniman*, the Hunt-Alfano report, which was generated in the course of an investigation of claimed employee misconduct, was a record pertaining to "internal personnel practices."

The petitioners argue that this case is distinguishable from *Fenniman* upon several grounds. Specifically, they contend that in *Fenniman*, the "public's right-to-know" was already largely satisfied by the prior release of "Internal Investigation Disposition Forms," where here, the precinct conveyed little information in its press release. We did not suggest in *Fenniman*, however, that the prior release of some information concerning the investigation affected our decision to reverse the trial court's disclosure of the investigatory files. Furthermore, with the exception of the description of the nature of the complaint, the information set forth in the precinct's press release was similar to the information contained in the disposition forms in *Fenniman*, 136 N.H. at 625-26, including the name of the charged employee and the outcome of the investigation.

In addition, the petitioners argue that the Hunt-Alfano report was not an "internal police investigatory file," as in *Fenniman*, where exemption was premised upon "encourag[ing] thorough investigation and discipline of

dishonest or abusive police officers." *Id.* at 627 (quotation omitted). Although the petitioners are factually correct, this distinction has little relevance to the issue before us. Nothing in the plain language of RSA 91-A:5, IV suggests that the legislature intended to exempt "records pertaining to internal personnel practices" only in the context of internal police investigations. The precinct also counters that public policy supports the investigation of complaints of misconduct by *all* public employees so that public bodies and agencies can take appropriate remedial action, especially where such a complaint alleges harassment or intimidation of another employee. It argues that the disclosure of records underlying, or arising from, internal personnel investigations would deter the reporting of misconduct by public employees, or participation in such investigations, for fear of public embarrassment, humiliation, or even retaliation. We find that the disclosure of the Hunt-Alfano report would implicate policy concerns similar to those underlying the disclosure of an "internal police investigatory file," and we reject the petitioners' reliance upon this narrow factual distinction.

The petitioners further contend that the investigation lost its "internal status" because: (1) the precinct contracted with outside investigators; (2) it permitted Mitchell, Hounsell, and Sares to observe the interviews, at the request of the employees, without a stipulation of confidentiality; (3) Alfano allowed Mitchell to review the report; and (4) the employees were allegedly encouraged to use the interviews as an opportunity to discuss the MRI report. Such arguments are unpersuasive, however, because nothing in the plain language of RSA 91-A:5, IV restricts a public body or agency from asserting an exemption under these circumstances, and the petitioners have presented no legal authority in support of their contentions. Moreover, while the trial court acknowledged a dispute concerning whether the employees were encouraged to discuss the MRI report in the investigation into the allegations against Smith, it, nevertheless, concluded that "discussion about the MRI report in the course of the investigation [would] not alleviate the concerns giving rise to the exclusion of internal personnel practice records from RSA 91-A." We agree.

█ Although the trial court would have been within its discretion to conduct an *in camera* review to determine whether any portion of the requested documents concerned the MRI report and was, arguably, subject to public disclosure, *see HealthTrust*, 151 N.H. at 506, neither party made this request below and the trial court applied the RSA 91-A:5, IV exemption based upon the parties' offers of proof. Furthermore, the petitioners never requested a partial disclosure of the materials; they

argued only that the presence of any information concerning the MRI report removed the entire Hunt-Alfano report, including the information concerning the Smith investigation therein, from exemption under RSA 91-A:5, IV. We reject the petitioners' zero-sum approach and, accordingly, conclude that the trial court did not err by determining that the Hunt-Alfano report was exempt from public disclosure.

*III. Estoppel*

We next examine whether the precinct was "estopped" from asserting the exemption. The petitioners argue that, regardless of the application of RSA 91-A:5, IV, the precinct was estopped from refusing to disclose the Hunt-Alfano report by its "prior release of the MRI Report and Attorney General's Report." They claim that all three reports were prepared in the same manner and contained essentially the same content. As this inquiry concerns only the prior disclosures made by the precinct, we need not consider the disclosure of the attorney general's report, as it is undisputed that it was the attorney general who released that report.

Although municipal corporations may be subject to estoppel, the law does not favor its application against municipalities. *Hansel v. City of Keene*, 138 N.H. 99, 102 (1993). "This is especially true when a valuable public interest may be jeopardized by applying the doctrine of estoppel against the municipality." *Id.* The party asserting estoppel bears the burden of proof. *City of Concord v. Tompkins*, 124 N.H. 463, 467 (1984). Even assuming without deciding that the petitioners could meet their burden of demonstrating the four essential elements of municipal estoppel, *id.* at 468, they cannot demonstrate, under these facts, that "the public interest in preventing the government from capriciously dealing with its citizens [outweighs] the risk, posed by estoppel, of undermining important government interests." *Id.* at 472; *see also Hansel*, 138 N.H. at 102.

The petitioners concede that the non-disclosure of records pertaining to internal personnel practices is an important government interest. They argue, however, that the precinct has ignored that interest by invoking RSA 91-A:5, IV to exempt records in an arbitrary fashion, and that the public interest in preventing the precinct commissioners from engaging in such conduct outweighs the important government interest at stake. Even though the trial court did not explicitly address this issue, the record supports a clear distinction between the substance of the MRI report, which primarily concerned the mismanagement of the precinct, and the Hunt-Alfano report, which was generated in the course of an investigation of alleged employee misconduct, pertained to "internal personnel practices," and, thus, was exempt from disclosure pursuant to RSA 91-A:5,

IV. As the petitioners have failed to demonstrate that the precinct acted in an arbitrary fashion by disclosing the MRI report and exempting the Hunt-Alfano report, we need not weigh the petitioners' construction of the "public interest" against the precinct's interest in non-disclosure. We, thus, reject the petitioners' claim that the precinct was estopped from asserting the RSA 91-A:5, IV exemption.

### IV. Attorney's Fees

Finally, we address whether the trial court erred by refusing to award the petitioners their attorney's fees under RSA 91-A:8. Having concluded that the trial court properly denied their petition for disclosure, we need not address the merits of their request for attorney's fees.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.