NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2016-0169

JEFFREY THOMAS CLAY

v.

CITY OF DOVER & a.

Argued: January 26, 2017
Opinion Issued: February 24, 2017

Law Offices of Stephen C. Brown and Associates, PLLC, of Rochester (Jared Bedrick on the memorandum of law and orally), for the plaintiff.

Anthony I. Blenkinsop, city attorney, of Dover, by brief and orally, for the defendants.

New Hampshire Municipal Association, of Concord (Stephen C. Buckley and Margaret M.L. Byrnes on the brief), as amicus curiae.

New Hampshire School Boards Association, of Concord (Theodore E. Comstock, and Barrett M. Christina on the brief), as amicus curiae.

DALIANIS, C.J. The defendants, the City of Dover (City) and its city council, school board, school board superintendent search committee, ethics commission, and city council ethics sub-committee, appeal an order of the Superior Court (Tucker, J.) requiring them to disclose to the plaintiff, Jeffrey Thomas Clay, the written rubric forms completed by members of the superintendent search committee when evaluating applicants for the superintendent position. On appeal, the defendants argue that the trial court erred when it determined that the completed rubrics are not exempt from disclosure under the Right-to-Know Law as "[r]ecords pertaining to internal personnel practices." RSA 91-A:5, IV (Supp. 2016). We reverse.

Although the defendants also argue that the trial court erroneously determined that the completed rubric forms are not exempt as documents "whose disclosure would constitute an invasion of privacy," id., we need not address that argument because we rule in the defendants' favor upon their first argument.

I. Facts

The facts relevant to whether the completed rubric forms constitute "[r]ecords pertaining to internal personnel practices," id., are as follows. While reviewing the process by which the City's school board hired a new school superintendent, the plaintiff, an Alton resident, discovered what he viewed to be violations of the Right-to-Know Law. See RSA ch. 91-A (2013 & Supp. 2016). In April 2014, he requested from the interim superintendent of schools a copy of the blank rubric form used by, and copies of the forms completed by, the school board's superintendent search committee members when evaluating candidates for the superintendent position.

The interim superintendent of schools sent the plaintiff a copy of a blank rubric form, but stated that he would not supply the completed forms, in part, because they pertain to internal personnel practices and matters, namely, "the consideration of applicants and the hiring of an employee."

According to the blank form, the superintendent search committee rated applicants on a scale of 1-4 in 12 categories: (1) "Cert or certifiable as Supt in NH"; (2) "Degree"; (3) "Administrative Experience"; (4) "Regional School District Experience"; (5) "Communication/PR"; (6) "Data Driven Decisions"; (7) "Budget Development & Implementation"; (8) "Instr/Curr/Assess/Eval"; (9) "Professional Development"; (10) "Strategic Planning & Goal Settings"; (11) "Technology Integration"; and (12) "Wild Card."

For six of those categories, the form instructs how committee members must score applicants. For instance, in the category "Cert or certifiable as Supt in NH," the form instructs that an applicant should receive a "4" for being certified in New Hampshire or elsewhere and a "3" for being "[c]ertifiable in

2

NH." Similarly, in the category "Degree," an applicant should receive a "4" for a doctorate degree, a "3" for a master's degree, and a "2" for a bachelor's degree. The other four categories for which the form provides scoring instruction are: "Administrative Experience"; "Regional School District Experience"; "Budget Development & Implementation"; and "Instr/Curr/Assess/Eval." The form provides no scoring instruction for the remaining six categories. The form states that a total of 48 points is possible.

Thereafter, the plaintiff petitioned the trial court for injunctive relief, requesting that the court order the defendants to disclose the names of the candidates who applied for the superintendent position and the rubric forms completed by the search committee members who evaluated those candidates. In May 2015, the trial court ordered the defendants to disclose the applicants' names. The defendants do not challenge this part of the May 2015 order on appeal.

The court also ordered the defendants to file the completed rubric forms under seal in order for it to "determine whether all or any part of [them] is exempt from disclosure." The defendants unsuccessfully moved for reconsideration of the court's May 2015 order.

In November 2015, the defendants filed the completed rubric forms under seal. Most of them merely contain the numerical scores that an individual search committee member, or the committee as a whole, gave the applicants. However, some also contain a search committee member's handwritten or typewritten comments about an applicant.

In its February 2016 order from which the defendants now appeal, the trial court ordered the completed rubric forms to be disclosed. The court stated that, because the school district voluntarily gave the plaintiff a blank form, "whether that document could be considered an internal one related to hiring is not at issue." With respect to the completed forms, the court decided that the ratings given to applicants "are not test scores or examination results, but are based on factors considered by committee members," and, therefore, "do not deal with personnel rules or practices as that term is used" in the Right-to-Know Law. Accordingly, the court concluded that the completed rubric forms are not exempt from disclosure under the exemption for "internal personnel practices." RSA 91-A:5, IV. This appeal followed.

After briefing was completed in this case, we decided Reid v. New Hampshire Attorney General, 169 N.H. ___ (decided December 23, 2016), in which we discussed, at length, the exemption under the Right-to-Know Law for "internal personnel practices." We ordered the parties to file supplemental memoranda addressing Reid and its impact, if any, upon the issues in this case. We now limit our analysis to the arguments the plaintiff raises in his supplemental memorandum. Specifically, we do not address the plaintiff's

argument made in his opening brief that the exemption under the Right-to-Know Law for records pertaining to internal personnel practices is not separate from the exemption for "personnel . . . or . . . other files whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV. As the plaintiff intimated at oral argument, our decision in Reid forecloses that contention. See Reid, 169 N.H. at ___ (slip op. at 14-16).

II. Discussion

Resolving the issues in this appeal requires us to interpret pertinent provisions of the Right-to-Know Law. "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law." N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 102-03 (2016) (quotation omitted). "Thus, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole." Id. at 103 (quotation omitted). "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted).

The Right-to-Know Law furthers "our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Montenegro v. City of Dover, 162 N.H. 641, 645 (2011); see N.H. CONST. pt. I, art. 8. "Although the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." N.H. Right to Life, 169 N.H. at 103 (quotation omitted). "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively." Id. (quotation omitted). We also look to the decisions of other jurisdictions interpreting similar acts for guidance, including federal interpretations of the federal Freedom of Information Act (FOIA). Id. "Such similar laws, because they are in pari materia, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved." Id. (quotation omitted).

"When a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure." Id. (quotation omitted). We review the trial court's statutory interpretation and its application of law to undisputed facts de novo. Id.

At issue is the interpretation of RSA 91-A:5, IV, which exempts from disclosure "[r]ecords pertaining to internal personnel practices." We first

4

consider whether the completed rubric forms concern "personnel practices." RSA 91-A:5, IV. In Reid, we agreed with the United States Supreme Court, when it interpreted the similarly-worded exemption under the FOIA, that the term "'personnel . . . , when used as an adjective, . . . refers to human resources matters.'" Reid, 169 N.H. at ___ (slip op. at 10) (quoting Milner v. Department of Navy, 562 U.S. 562, 569 (2011)) (brackets omitted). As the Supreme Court has explained, the word "personnel" concerns "the conditions of employment" in a governmental agency, including "such matters as hiring and firing, work rules and discipline, compensation and benefits." Milner, 562 U.S. at 570; see Reid, 169 N.H. at ___ (slip op. at 10). Here, the completed rubric forms relate to hiring, which is a classic human resources function. See Reid, 169 N.H. at ___ (slip op. at 10). Thus, they pertain to "personnel practices" as that term is used in the Right-to-Know Law. See id.

The plaintiff recognizes that hiring is a personnel function. However, he contends that, under Reid, the completed forms pertain to personnel practices only if they relate to personnel matters "in which the public could not reasonably be expected to have an interest." Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976).

The plaintiff misreads our decision in Reid and ignores our decisions in Hounsell v. North Conway Water Precinct, 154 N.H. 1, 4 (2006), and Union Leader Corp. v. Fenniman, 136 N.H. 624, 626 (1993). In Reid, we expressly held that, generally, "the term 'personnel' relates to employment." Reid, 169 N.H. at ___ (slip op. at 10); see id. (slip op. at 11) (stating that we were following New Hampshire precedent "in treating an investigation into employee misconduct as a personnel practice"); see also Montenegro, 162 N.H. at 650 (concluding that job titles of persons who monitor a city's surveillance equipment did not pertain to a personnel practice because job titles are not akin to such matters as hiring, firing, work rules, or discipline).

As we observed in Reid, this is also the meaning that we implicitly gave the term in Hounsell, 154 N.H. at 4, and Fenniman, 136 N.H. at 626. See Reid, 169 N.H. at ___ (slip op. at 10). In Hounsell, we held that a report by the employer's legal counsel generated in the course of the employer's investigation of claimed employee misconduct was a record pertaining to personnel practices. Hounsell, 154 N.H. at 4. In Fenniman, we explained that internal personnel discipline constitutes a "quintessential example" of a personnel practice. Fenniman, 136 N.H. at 626. Although in Reid, we were critical of Fenniman and Hounsell in construing the "internal personnel practices" exemption in the context of employee misconduct investigations, we declined to overrule them sua sponte. See id. (slip op. at 7-9).

We next consider whether the personnel practices to which the completed rubric forms pertain are "internal" within the meaning of the Right-to-Know Law. In Reid, we concluded that the use of the word "internal" to

5

modify the phrase "personnel practices" means "practices that exist or are situated within the limits of employment." Id. (slip op. at 10-11) (quotations and brackets omitted). Thus, we clarified that an investigation into employee misconduct relates to "internal personnel practices" when it "take[s] place within the limits of an employment relationship[;] [i]n other words, the investigation must be conducted by, or . . . on behalf of, the employer of the investigation's target." Id. (slip op. at 11); see Fenniman, 136 N.H. at 626 (holding that documents compiled during an internal investigation of a police officer's misconduct pertained to internal personnel practices); see also Hounsell, 154 N.H. at 4 (investigative report by employer's legal counsel regarding an employee's alleged misconduct pertained to internal personnel practices). The Supreme Court has explained that for information to be deemed "internal" within the meaning of Exemption 2 of the FOIA, "the agency must typically keep the records to itself for its own use." Milner, 562 U.S. at 570-71 n.4. Here, the completed rubric forms are "internal" because they were filled out by members of the school board's superintendent search committee on behalf of the school board, the entity that employs the superintendent. See Reid, 169 N.H. at ___ (slip op. at 11).

The plaintiff argues that the completed forms do not pertain to "internal" personnel practices because "no employment relationship exist[s] between the applicant and the school board." He contends that "all the information that is presented by [an] applicant in the course [of] an interview process is necessarily external because it originates from outside the relationship." He asserts that the completed forms are, therefore, unlike "information gathered internally, such as job performance reviews, disciplinary reports, and compensation."

The plaintiff too narrowly construes our decision in Reid. The issue in Reid was whether documents pertaining to the investigation by the New Hampshire Attorney General into alleged wrongdoing by former Rockingham County Attorney James Reams constituted internal personnel practices. Id. (slip op. at 1-2, 6-7). In that context, we held that documents related to an investigation into alleged misconduct constitute "internal personnel practices" only when the investigation is "conducted on behalf of the employer of the investigation's target." Id. (slip op. at 13). Because the relationship between the attorney general and a county attorney lacked "the usual attributes of an employer-employee relationship," we concluded that the attorney general was not Reams's employer, and, thus, that the documents did not pertain to internal personnel practices within the meaning of the Right-to-Know Law. Id. (slip op. at 13).

In this case, by contrast, the applicants were evaluated on behalf of the entity that employs the school superintendent. Because this case involves hiring and not investigation into misconduct, it is immaterial that there is no employment relationship between the applicants and the City. The information

6

provided by the applicants to the superintendent search committee was gathered in the course of the hiring process, a process that was internal to the search committee and conducted on behalf of the superintendent's employer.

Because the completed rubric forms pertain to "internal personnel practices" they are exempt from disclosure under the Right-to-Know Law. See id. (slip op. at 15) (explaining that we do not apply a balancing test to determine whether materials related to internal personnel practices are exempt from disclosure under the Right-to-Know Law); see also Fenniman, 136 N.H. at 627 (holding that the balancing test that we apply to other exemptions under the Right-to-Know Law, which weighs the benefits of nondisclosure against the benefits of disclosure, "is inappropriate" when determining whether documents pertaining to internal personnel practices are exempt from disclosure because "the legislature has plainly made its own determination" that such "documents are categorically exempt").

Reversed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.